IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

WILLIE A. SMITH,

     Plaintiff,

v.                               CASE NO. 1:15-cv-202-MP-GRJ

SOLORZANO,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on ECF No. 18, Plaintiff's Motion for

Summary Judgment, and ECF No. 31, Defendant Ronald Solorzano-

Pallais, M.D.'s Motion for Summary Judgment and Memorandum of Law in

Support. Dr. Solorzano-Pallais has filed a response in opposition to

Plaintiff's motion, (ECF No. 25), and Plaintiff has filed a response in

opposition to Dr. Solorzano-Pallais' cross-motion, (ECF No. 33.) The

motions are, therefore, ripe for review. For the reasons discussed below, it

is recommended that Plaintiff's motion for summary judgment be denied,

and Dr. Solorzano-Pallais' motion for summary judgment be granted.

# I. <u>INTRODUCTION</u>

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC"), is proceeding *pro se* pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff's sole claim against Dr. Solorzano-Pallais arises from the treatment Dr. Solorzano-Pallais provided—or failed to provide—for Plaintiff's hypertension. Plaintiff asserts that Dr. Solorzano-Pallais was deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment.

Plaintiff has filed a motion for summary judgment, arguing that the evidence demonstrates Dr. Solorzano-Pallais was deliberately indifferent to Plaintiff's serious medical needs by refusing to refill Plaintiff's blood pressure medication. Plaintiff contends that he is entitled to judgment as a matter of law. (ECF No. 18.) Plaintiff has not provided any affidavits or

other evidence in support of his claim.[1] Nonetheless, 28 U.S.C. § 1746

provides that,

> [w]herever, under any . . . rule, . . . any matter is required or
> permitted to be supported, evidence, established, or proved by
> the sworn declaration, verification, certificate, statement, oath,
> or affidavit, in writing of the person making the same . . . such
> matter may, with like force and effect, be supported, evidence,
> established, or proved by the unsworn declaration, certificate,
> verification, or statement, in writing of such person which is
> subscribed by him, as true under penalty of perjury, and
> dated[.]

Plaintiff's complaint, (ECF No. 1), motion for summary judgment, (ECF No.

18), reply and surreply to Dr. Solarzano-Pallais' response, (ECF Nos.

28–29), and response to Dr. Solorzano-Pallais' cross-motion for summary

judgment, (ECF No. 33), are signed under penalty of perjury. Thus, these

filings are properly treated by the Court like sworn affidavits and may be

considered in ruling on the motions for summary judgment. *See Sammons*

---

[1] The Court advised Plaintiff on December 28, 2016 that he must file any supporting evidentiary material and that his memorandum must include pinpoint citations to the record evidence supporting each factual assertion. (ECF No. 15.) In support of his motion for summary judgment, Plaintiff submitted: (1) Copies of his health slip/passes; (2) A buzzle.com article on degenerative bone disease; (3) Various medical records; and (4) A letter from the FDOC, dated October 14, 2008, responding to Plaintiff's medical care complaints. (ECF No. 18.) Plaintiff asserts that these documents further prove Dr. Solorzano's deliberate indifference to Plaintiff's serious medical needs. (*Id.* at 7.) Plaintiff is misguided. His claim here, as asserted in his complaint, is specifically that Dr. Solorzano was deliberately indifferent to Plaintiff's serious medical needs by refusing to refill Plaintiff's blood pressure medication. (ECF No. 1.) None of these documents, however, even remotely relate to Plaintiff's hypertension Plaintiff may not assert new instances of alleged deliberate indifference in his motion for summary judgment. To the extent Plaintiff has other complaints regarding his medical treatment, he would have to file a new complaint after properly exhausting administrative remedies.

*v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."); Henderson v. Cherry, No. 5:08cv283/RS/EMT,  2010 WL 1257487, at *1 n.2 (N.D. Fla. Mar. 16, 2010) (declining to consider plaintiff's response to defendant's motion for summary judgment as evidence because the response was not made under penalty of perjury).

Dr. Solorzano-Pallais has also filed a cross-motion for summary judgment, arguing that the evidence demonstrates he was not deliberately indifferent to Plaintiff's serious medical needs. Dr. Solorzano-Pallais says he is, therefore, entitled to judgment as a matter of law. (ECF No. 31.) In support of his motion, Dr. Alvarez has submitted: (1) an affidavit of Dr. Solorzano-Pallais, (ECF No. 27-1, "Solorzano Aff."); and (2) Plaintiff's medical records, (ECF No. 27-2, "Smith MR".)

## II. <u>EVIDENCE</u>

Plaintiff has had hypertension—high blood pressure—since 2003. (ECF No. 18 at 2.) While Plaintiff was incarcerated at Columbia Correctional Institution ("Columbia CI"), Plaintiff was treated by Dr. Marcus. (ECF No. 18 at 2; ECF No. 28 at 1.) On August 6, 2014, Dr. Marcus wrote

Plaintiff a one-year prescription for 10 milligrams of Norvasc per day for his hypertension. (Smith MR at 3.) Plaintiff says, however, that the prescriptions were only for three month periods and his last prescription expired in February 2015. (ECF No. 28 at 1 ¶ 4; ECF No. 29 at 1 ¶ 2.) Plaintiff also says Dr. Marcus refused to refill Plaintiff's Norvasc prescription in February 2015 because he wanted to replace it with something stronger. (ECF No. 18 at 2; ECF No. 28 at 1.)

After his appointment with Dr. Marcus, Plaintiff was attacked by several inmates and sent to confinement pending transfer to Mayo Correctional Institution ("Mayo CI"). (ECF No. 28 at 1.) Plaintiff says Dr. Marcus never ordered the new prescription, nor did he refill Plaintiff's Norvasc prescription. (*Id.*) Thus, while Plaintiff was in confinement, the nurses gave him someone else's blood pressure medication. (*Id.*)

Plaintiff transferred to Mayo CI on February 19, 2015. (Solorzano Aff. ¶ 6; Smith MR at 1–2.) At the time, Plaintiff was being treated for hypertension, glaucoma, and a history of hallucinations and anger management issues. (*Id.*) He was also receiving chronic care for hypertension and glaucoma. (*Id.*) Plaintiff's transfer report did not list Norvasc as one of Plaintiff's current medications. (Smith MR at 2.)

Dr. Solorzano-Pallais first treated Plaintiff at Mayo CI on March 23, 2015, for issues unrelated to Plaintiff's hypertension. (Solorzano Aff. ¶ 8.) At the time, Plaintiff's blood pressure was 130/80. (*Id.*) Dr. Solorzano-Pallais attests that 130/80 is an acceptable blood pressure for a 58 or 59-year old, as Plaintiff was on March 23, 2015. (*Id.* ¶¶ 8–9; Smith MR at 5.) Plaintiff says that he told Dr. Solorzano he either needed his prescription for Norvasc renewed or be prescribed another high blood pressure medication. (ECF No. 18 at 2.) Plaintiff attests that his prescription was not refilled for approximately five months. (*Id.*)

On June 1, 2015, Plaintiff saw nursing staff for vision problems. (Solorzano Aff. ¶ 10; Smith MR at 6.) Plaintiff's blood pressure was 128/84. (*Id.*) Plaintiff saw nursing staff again on June 15, 2015 for coughing and congestion. (Solorzano Aff. ¶ 11; Smith MR at 7.) Plaintiff's blood pressure was 137/91. (*Id.*) At the time, Plaintiff was taking Simethicone, CTM, Zantac, Flomax, and Protonix. (Smith MR at 7.)

On June 18, 2015, Plaintiff saw nursing staff for coughing and a runny nose. (Solorzano Aff. ¶ 12–13; Smith MR at 8–10.) Plaintiff's blood pressure was 117/81 and 118/78. (*Id.*) At the time, Plaintiff was taking Simethicone, Zantac, Flomax, and Protonix. (Smith MR at 8.) Approximately an hour later, Dr. Solorzano-Pallais treated Plaintiff. (Smith

MR at 10.) Because Plaintiff was out of CTM, Dr. Solorzano-Pallais refilled the prescription. (Smith MR at 8–10.)

Dr. Solorzano-Pallais next treated Plaintiff on July 7, 2015 for issues unrelated to hypertension, at which time, Plaintiff's blood pressure was 120/80. (Solorzano Aff. ¶ 14; Smith MR at 11.)

Plaintiff next submitted a sick-call request on July 28, 2015, requesting prescription refills for CTM, Simethicone, Zantac, Plavix, and Tamsulosin. (Solorzano Aff. ¶ 15; Smith MR at 12.) Plaintiff did not request a refill for any blood pressure medication. (*Id.*) When Plaintiff was seen on August 3, 2015, Plaintiff also did not request refills for any blood pressure medications. (Solorzano Aff. ¶ 16; Smith MR at 13.)

Plaintiff treated with the Cardiovascular Clinic ("CC") and Chronic Illness Clinic ("CIC") in August 2015 for his high blood pressure. (Solorzano Aff. ¶ 17–18; Smith MR at 14–15.) At the time, Plaintiff's blood pressure was 120/80. (*Id.*) Plaintiff denied having any palpitations, chest pain, shortness of breath, or eye pain or discomfort. (Solorzano Aff. ¶ 18.) Plainitff says that he was having dizzy spells, headaches, and had to constantly lie down. (ECF No. 1 at 5.) Dr. Solorzano-Pallais says, however, Plaintiff did not say anything about having headaches, dizziness, or a need to lie down. (Solorzano Aff. ¶ 18.) Further, Dr. Solorzano-Pallais said that

Plaintiff reported taking his medication as prescribed and that he is complaint with his treatment plan. (Solorzano Aff. ¶ 18; Smith MR at 14.) Thus, Dr. Solorzano-Pallais assessed Plaintiff's high blood pressure as being controlled well. (Solorzano Aff. ¶ 18; Smith MR at 14–15.) The notes also indicate that Plaintiff was taking Norvasc. (Solorzano Aff. ¶ 19; Smith MR at 15.) But, Plaintiff says this record has been forged because he was not taking Norvasc at that time. (ECF No. 29 ¶ 5.) Plaintiff, also attests that he advised Dr. Solorzano-Pallais on two occasions around early August 2015, that he needed a Norvasc refill but Dr. Solorzano-Pallais refused to write the prescriptions. (ECF No. 1 at 5.) Yet, Dr. Solorzano-Pallais attests that Plaintiff did not report needing a Norvasc refill, nor was Dr. Solorzano-Pallais aware that Plaintiff's prescription for Norvasc was no longer active. (Solorzano Aff. ¶ 19.)

Then, on August 31, 2015, Plaintiff went to the emergency room after being hit in the eye with a balled up piece of paper. (Solorzano Aff. ¶ 20; Smith MR at 16.) At that time, nursing staff also performed a pre-special housing health evaluation of Plaintiff. (Solorzano Aff. ¶ 21; Smith MR at 17.) Plaintiff had no current medical complaints. (Smith MR at 17.) Plaintiff's blood pressure was, however, 152/88. (Solorzano Aff. ¶ 21; Smith MR at 16–17.) Plaintiff says the nurse asked Plaintiff why his blood

pressure was so high, to which Plaintiff responded that Dr. Solorzano-Pallais refused to refill Plaintiff's blood pressure medication. (ECF No. 1 at 5.) The evaluation noted, however, that Plaintiff was taking 10 milligrams of Norvasc daily and did not need any refills. (Solorzano Aff. ¶ 21; Smith MR at 17.) Plaintiff says that the evaluation was forged, because he was not taking Norvasc at that time. (ECF No. 29 ¶ 5.)

On September 9, 2015, Plaintiff submitted a sick-call request for a diet pass renewal, a blood pressure medication renewal, and his pain medication that he did not get at the prescription window. (Solorzano Aff. ¶ 22; Smith MR at 19.) Plaintiff's chart was referred to Dr. Solorzano-Pallais on September 10, 2015. (Solorzano Aff. ¶ 22; Smith MR at 18.) Thus, on September 11, 2015, Dr. Solorzano-Pallais submitted a prescription order for 10 milligrams of Norvasc daily. (Solorzano Aff. ¶ 22; Smith MR at 20.) The prescription was written for 210 days. (*Id.*)

On October 2, 2015, Plaintiff saw nursing staff after falling and hurting his thumb. (Solorzano Aff. ¶ 23; Smith MR at 21.) Plaintiff's current medications included Norvasc and his blood pressure was 139/85. (Smith MR at 21.) Plaintiff returned to medical on October 29, 2015 for his thumb pain. (Smith MR at 23.) At the time, his blood pressure was 130/74. (*Id.*)

Dr. Solorzano next treated Plaintiff on November 2, 2015. (Solorzano Aff. ¶ 26; Smith MR at 24.) Plaintiff's blood pressure was 115/75. (*Id.*) The notes state that Plaintiff was taking his scheduled medications. (*Id.*) Dr. Solorzano also extended Plaintiff's Norvasc prescription through November 2, 2016. (Solorzano Aff. ¶ 26; Smith MR at 25.)

Dr. Solorzano last treated Plaintiff on November 23, 2015, for a follow-up for Plaintiff's thumb injury. (Solorzano Aff. ¶ 27; Smith MR at 26.) Plaintiff's blood pressure was 120/80. (*Id.*) Dr. Solorzano has had no involvement with Plaintiff's care since November 23, 2015. (Solorzano Aff. ¶ 27.)

Plaintiff subsequently visited medical on January 19, 2016, January 25, 2016, and January 29, 2016. (Smith MR at 27–29.) His blood pressure was 115/74, 137/84, and 148/96, respectively. (*Id.*)

Then, in February 2016, Plaintiff was transferred to Gulf Correctional Institution ("Gulf CI"). (Smith MR at 30.) At the time of his transfer, Plaintiff's current medications included 10 milligrams of Norvasc daily. (*Id.*) Upon his arrival at Gulf CI, Plaintiff's blood pressure was 130/84. (*Id.* at 31.) Plaintiff was subsequently seen by the cardiology clinic at Gulf CI on February 18, 2016, at which time his blood pressure was 138/85. (*Id.* at

32–33.) Plaintiff reported that he felt good, and did not have shortness of breath or dizziness. (*Id.* at 32.)

Dr. Solorzano-Pallais attests that as a physician, he is not responsible for monitoring the expiration of patients' chronic medication prescriptions. (Solorzano Aff. ¶ 19.) Instead, the nursing staff monitors the prescriptions. (*Id.*) The health needs request procedure is also in place for an inmate when he needs a renewal. (*Id.*) Moreover, when inmates at Mayo CI do not have a prescription for a specific medication, as long as the prescription is stocked in the prison's medication window, the inmate has the ability to request the medication. (Solorzano Aff. ¶ 35.) While Dr. Solorzano-Pallis treated Plaintiff, Norvasc was stocked at the medication window. (*Id.*)

According to Dr. Solorzano-Pallais, a physician licenced by the State of Florida,

> [h]igh blood pressure, or hypertension, occurs when the pressure in a person's arteries is higher than it should be. Blood pressure is written as, for example, 125/75 mm Hg. The top number (the "systolic" number) is the pressure that occurs when a person's hear beats. The bottom number (the "diastolic" number) is the pressure that occurs when a person's hear rests between beats. Normal blood pressure is generally considered to be pressure at or below 120/80. High blood pressure is generally considered to be pressure above 140/90 that stays high over time. Additionally, a person's blood pressure generally increases with age.

(Solorzano Aff. ¶¶ 2, 9.) Dr. Solorzano-Pallais attests that hypertension does not cause symptoms, such as dizziness, headaches, or a desire to lay down, unless and until a person's blood pressure reaches extremely high levels. (*Id.* ¶ 36.) Blood pressure must be at or above 200/120 for symptoms to manifest. (*Id.*) But, even if a person's blood pressure reaches 200/120, he still may not experience any symptoms. (*Id.*) Although a blood pressure of 150/90 is considered "high," it is not sufficient for a person to start experiencing symptoms. (*Id.*)

Dr. Solorzano-Pallais asserts that he did not disregard any risk of harm to Plaintiff. (*Id.* ¶ 37.) Instead, he attests that he "provided appropriate treatment, including regular physical examinations and blood pressure checks, and making multiple orders renewing his blood pressure medication." (*Id.*)

### III. <u>STANDARD OF REVIEW</u>

In accordance with Rule 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light

most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005).

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material

fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

The evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-movant. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted).

## IV. <u>DISCUSSION</u>

Plaintiff claims that Dr. Solorzano-Pallais was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. Plaintiff says that he repeatedly asked Dr. Solorzano-Pallais to refill his blood pressure medication, but Dr. Solorzano-Pallais refused. Dr. Solorzano-Pallais, however, argues that the evidence demonstrates that he was not deliberately indifferent to Plaintiff's serious medical needs because Plaintiff was prescribed blood pressure medication and, to the best of Dr. Solorzano-Pallais' knowledge, was taking blood pressure medication. Both Plaintiff and Dr. Solorzano-Pallais assert—independently—that the

evidence demonstrates they are entitled to summary judgment as a matter of law.

The Eighth Amendment provides the right to be free from cruel and unusual punishment. U.S. Const. amend. VIII. The Supreme Court has held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To establish an Eighth Amendment violation stemming from the deprivation of medical attention, a prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

A plaintiff has a "serious medical need" when the condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). In this case, Dr. Solorzano-Pallais does not dispute that Plaintiff's hypertension is a serious medical need. *See Benton v. Torres-Gonzalez*, No. 4:11-cv-254-MP-CAS, 2013 WL 791013, at *5 (N.D. Fla. Feb. 11, 2013) ("The need to treat high blood pressure is

obvious even to a lay person."). But, to prove that Dr. Solorzano-Pallais violated Plaintiff's Eighth Amendment rights, Plaintiff must prove that Dr. Solorzano-Pallais was deliberately indifferent to Plaintiff's hypertension.

To show that Dr. Solorzano-Pallais was deliberately indifferent to Plaintiff's hypertension, Plaintiff must prove that: (1) Dr. Solorzano-Pallais had a subjective knowledge of a risk of serious harm; (2) Dr. Solorzano-Pallais disregarded that risk; and (3) Dr. Solorzano-Pallais did so by conduct that is more than gross negligence. *See Brown v. Johnson*, 387 F.3d 1344,1351 (11th Cir. 2004); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (the prisoner must demonstrate that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").

The undisputed evidence demonstrates that Plaintiff had an active prescription for a blood pressure medication—Norvasc—at the time of his transfer to Mayo CI, and through August 5, 2015. Plaintiff's medical records demonstrate that upon Plaintiff's transfer to Mayo, Plaintiff had an active prescription for 10 milligrams of Norvasc per day. (Solorzano Aff. ¶ 7; Smith MR at 3.) The prescription was written on August 6, 2014 for a

term of one year. (Smith MR at 3.) Nothing in the record suggests that his Norvasc prescription was somehow cancelled. Despite Plaintiff's assertion that Dr. Marcus only wrote the prescription for a 3-month supply, the medical record blatantly contradicts his assertion. Thus, Plaintiff's prescription was active through August 5, 2015. And considering Plaintiff was transferred to Mayo CI on February 15, 2015, his Norvasc prescription was active at the time of transfer. While Plaintiff may have believed his prescription had expired and was, therefore, not actually taking the Norvasc at the time of transfer, such does not negate the fact that his prescription was active. Thus, even if Plaintiff told Dr. Solorzano-Pallais on March 23, 2015, that he needed a prescription refill, the simple fact is, Plaintiff did not need a refill until August 6, 2015.

What is disputed, however, is whether Dr. Solorzano-Pallais knew in early August 2015, that Plaintiff needed a refill for Norvasc. Plaintiff says he was not taking Norvasc at the time and that he told Dr. Solorzano-Pallais that the prescription needed to be refilled. (ECF No. 1 at 5.) Dr. Solorzano-Pallais says he was unaware that Plaintiff's prescription was not current and that Plaintiff did not report anything about needing a refill. (Solorzano Aff. ¶ 19.) Plaintiff's medical records demonstrate, however, that Plaintiff was taking Norvasc—both on August 17, 2015 and on August

31, 2015. (Smith MR at 14–15, 17.) Plaintiff asserts that these medical records were altered. (ECF No. 29 ¶ 5.)

Typically, an assertion that documents were altered without any suggestion of a motive or other evidence to support the assertion fails to establish an issue of fact. *See Cameron v. Sarraf*, 128 F. Supp. 2d 906, 912 (E.D. Va. 2000), *aff'd*, 232 F.3d 886 (4th Cir. 2000) (plaintiff's bare assertion that his medical records were altered, without any indication of motive for altering them, or any documentary evidence to the contrary, failed to establish an issue of fact). Here, however, Plaintiff's one-year prescription of Norvasc would have expired on August 5, 2015. Further, it is undisputed that Dr. Solorzano-Pallais did not refill the prescription until September 11, 2015. (Solorzano Aff. ¶ 22; Smith MR at 20.) It is questionable, therefore, why Plaintiff's medical records indicate that Plaintiff was taking Norvasc on August 17, 2015 and August 31, 2015, when Plaintiff did not have an active Norvasc prescription from August 6, 2015 through September 10, 2015. In this respect, Plaintiff and Dr. Solorzano-Pallais tell two different stories, and neither is blatantly contradicted by the record. Thus, there is a genuine issue of fact as to whether Dr. Solorzano-Pallais knew Plaintiff's prescription was not current after expiring on August 5, 2015. A reasonable jury could, therefore,

conclude that Dr. Solorzano-Pallais had subjective knowledge of a serious risk of harm to Plaintiff.

Assuming Dr. Solorzano-Pallais had subjective knowledge of a serious risk of harm to Plaintiff, there is also a question of fact as to whether Dr. Solorzano-Pallais disregarded that risk. Dr. Solorzano-Pallais attests that Plaintiff did not report needing a refill for Norvasc in August 2015. He also says that the health needs request procedure is in place for an inmate to request medication refills. The evidence demonstrates that Plaintiff submitted a sick-call request on July 28, 2015, which did not include a request for Norvasc. (Id. ¶ 15; Smith MR at 12.) Nonetheless, Plaintiff attests that he advised Dr. Solorzano-Pallais twice around early August 2015 that he needed a refill and that Dr. Solorzano-Pallais refused to write the prescription. (ECF No. 1 at 5.) It is undisputed that Plaintiff did not follow the proper procedure to request a refill in August 2015. What is disputed is whether Plaintiff verbally informed Dr. Solorzano-Pallais that he needed a refill. Plaintiff says he did, Dr. Solorzano-Pallais says he did not. This is an issue of fact that the Court cannot determine. Viewing the evidence in the light most favorable to Plaintiff, if Dr. Solorzano-Pallais knew Plaintiff's prescription was not current, and if Plaintiff told Dr. Solorzano-Pallais that he needed a refill, a reasonable jury could conclude

that Dr. Solorzano-Pallais disregarded a serious risk to Plaintiff even though Plaintiff failed to follow the proper procedure.

Assuming, however, that Dr. Solorzano-Pallais had subjective knowledge of a serious risk of harm, no reasonable jury could conclude that Dr. Solorzano-Pallais did so by conduct that is more than gross negligence. Demonstrating that a prison official disregarded a serious risk of substantial harm entails a showing of something more than gross negligence, but can be shown by something less than actions undertaken with an intent to cause harm. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Where the case turns on an alleged delay in providing medical care, rather than the type of medical care provided, courts should consider: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay. *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1327 (11th Cir. 2007) (*citing Hill*, 40 F.3d at 1189).

In this case, although hypertension medication is undoubtably a serious need, Plaintiff has provided no evidence that Dr. Solorzano-Pallais' action—or inaction—caused Plaintiff's condition to worsen. In August 2015, Plaintiff's blood pressure was 120/80. On August 31, 2015, Plaintiff's blood pressure was 152/88. Dr. Solorzano-Pallais refilled Plaintiff's prescription on September 11, 2015. At the next seven visits before Plaintiff was

transferred to Gulf CI, Plaintiff's blood pressure was measured as 139/85, 130/74, 115/75, 120/80, 115/74, 137/84, and 148/96. After his transfer to Gulf CI, his blood pressure was measured at 130/84 and 138/85. None of Plaintiff's medical records demonstrate that he was having any symptoms or problems related to his blood pressure. Although Plaintiff claims that in August 2015 he was having dizziness, headaches, and had to constantly lie down, none of his medical records from August 2015 support such assertions. Instead, Plaintiff denied having any palpitations, chest pain, shortness of breath, or eye or pain discomfort.

Moreover, the undisputed evidence demonstrates that hypertension does not cause symptoms, such as those that Plaintiff claims he was having, unless and until the person's blood pressure reaches 200/120. (Solorzano Aff. ¶ 36.) According to the evidence, even Plaintiff's "high" blood pressure of 152/88 on August 31, 2015, would not caused him to experience symptoms. (*Id.*) The evidence shows that the delay in receiving medication did not further harm Plaintiff. *See Hall v. Kim*, No. 1:02-CV-5972-OWWSMSP, 2005 WL 2016833, at *5 (E.D. Cal. Aug. 19, 2005) (defendant entitled to summary judgment because, although factual disputes existed regarding whether plaintiff informed defendant that he was out of medication and whether defendant refused to refill the prescription,

the undisputed evidence showed the delay in receiving medication did not further harm plaintiff).

Despite the fact that Plaintiff argues he could have died from his hypertension, the undisputed evidence demonstrates that Dr. Solorzano-Pallais' delay in refilling Plaintiff's prescription did virtually nothing. Even to the extent that Plaintiff's blood pressure reached 152/88 before Dr. Solorzano-Pallais refilled his prescription, there is no evidence that the lack of a prescription is what caused his blood pressure to reach that point. Notably, Plaintiff's blood pressure was 148/96 on January 29, 2016—while Plaintiff was taking Norvasc. There is simply no evidence in this case suggesting that time was of the essence and that the delay worsened Plaintiff's condition. *Cf. Goebert*, 510 F.3d at 1329 (defendant was not entitled to summary judgment where the evidence showed that time was of the essence, and the delay attributable to the defendant's deliberate indifference likely caused the loss of plaintiff's child).

Even if Dr. Solorzano-Pallais knew Plaintiff's prescription had lapsed and disregarded a risk of harm to Plaintiff, there is no evidence demonstrating that he did so by more than gross negligence. Whether or not Dr. Solorzano refused Plaintiff's verbal requests for a refill, the undisputed evidence shows that Plaintiff did not follow the proper

procedure for requesting a refill. *See Brown v. McGowan*, No. 3:13-cv-545-RV-EMT, 2014 WL 7391918, at *9 (N.D. Fla. Dec. 29, 2014) (plaintiff failed to show genuine issue of material fact as to whether defendants were deliberately indifferent to a need for medical treatment where plaintiff did not follow the proper procedure for obtaining a prescription refill). Plaintiff did not submit any sick-call requests for a refill of Norvasc until September 9, 2015. (Smith MR at 19.) The request was referred to Dr. Solorzano-Pallais the next day and Dr. Solorzano-Pallais submitted a prescription order for Plaintiff on September 11, 2015. (Smith MR at 18, 20.) Despite Plaintiff's allegation that Dr. Solorzano Pallais only refilled the prescription because Plaintiff filed the instant lawsuit, his assertion is not only devoid of any evidentiary support, but also belied by the fact that Plaintiff's complaint was provided to prison officials for mailing on September 15, 2015—four days *after* Dr. Solorzano-Pallais filled Plaintiff's prescription.[2]

---

[2] This fact also independently concerns the Court. As Dr. Solorzano-Pallais points out, Plaintiff acknowledged in his complaint that he "is an active litigant and may only proceed without prepayment" of the filing fee if he is in "imminent danger of a serious physical injury" pursuant to 28 U.S.C. § 1915(g). (ECF No. 1.) Plaintiff asserted that he was in imminent danger because, as of the date of filing—September 15, 2015—Plaintiff had allegedly not received his blood pressure medication. (*Id.*) The Court granted Plaintiff leave to proceed as a pauper without the prepayment of the entire filing fee. (ECF No. 5.) But now, the facts demonstrate that Dr. Solorzano-Pallais refilled the prescription four days before Plaintiff filed his complaint. Regardless of whether Plaintiff's prescription was active for the preceding five months, once Dr. Solorzano-Pallais refilled the prescription, any "imminent danger of a serious physical injury" had passed. Plaintiff failed to advise the Court of this fact. Behavior such as this will not be condoned. Had Dr. Solorzano-Pallais opted to file a motion to revoke Plaintiff's IFP status, the Court likely would have granted the request.

Although a reasonable jury could find that Dr. Solorzano-Pallais had subjective knowledge of a serious risk of harm to Plaintiff and disregarded that risk, the undisputed evidence demonstrates that Dr. Solorzano-Pallais did not do so by conduct that equates to more than gross negligence. Even if the evidence demonstrates that Dr. Solorzano-Pallais was negligent in providing treatment, such does not constitute an Eighth Amendment violation. *See McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999).

In this case, Plaintiff has failed to prove that he is entitled to judgment as a matter of law. To the contrary, even viewing the evidence in the light most favorable to Plaintiff, Dr. Solorzano-Pallais has demonstrated that he was not deliberately indifferent to Plaintiff's serious medical needs and, therefore, is entitled to judgment as a matter of law.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.    Plaintiff's motion for summary judgment, ECF No. 18, should be **DENIED**; and

2.    Dr. Solorzano-Pallais' motion for summary judgment, ECF No. 31, should be **GRANTED**.

**IN CHAMBERS** this 21st day of July, 2016.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**